AARON H. COLE, CA Bar No. 236655
aaron.cole@ogletree.com
VI N. APPLEN, CA Bar No. 273623
vi.applen@ogletree.com
PATRICK T. CAIN, CA Bar No. 352068
patrick.cain@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:  213-239-9800
Facsimile:   213-239-9045

Attorneys for Defendants
DFA DAIRY BRANDS FLUID, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRIN CORNWELL, an individual and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DFA DAIRY BRANDS FLUID, LLC, a Delaware limited liability company; HEARTLAND FARMS, LLC, a California limited liability company; and DOES 1 through 100, inclusive<br><br>　　　　Defendants. | Case No. 2:26-cv-02393<br><br>**DEFENDANT DFA DAIRY BRANDS FLUID, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Declarations of Kevin J. Cody, Hassan Assaf and Vi N. Applen in Support of Removal]<br><br>Complaint Filed: October 23, 2025 |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF DARRIN CORNWELL AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant DFA Dairy Brands Fluid, LLC ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Los Angeles, originally filed as Case No. 25STCV31125, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(b), 1446, and 1453 because: (1) Plaintiff and other members of the putative class are citizens of a State different from any defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs. In support of such removal, Defendant states as follows[1]:

## I.    PROCEDURAL BACKGROUND AND TIMELINESS OF REMOVAL

1.    On October 23, 2025, plaintiff Darrin Cornwell ("Plaintiff") filed his Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Los Angeles, entitled *Darrin Cornwell v. DFA Dairy Brands Fluid, LLC*, assigned case number 25STCV31125 (the "State Court Action"). (Declaration of Vi N. Applen ["Applen Decl."] ¶ 2.) A copy of the Complaint is attached to this Notice of Removal as **Exhibit A**.

2.    The Complaint alleges ten causes of action: (1) failure to pay overtime wages, (2) failure to pay minimum wages, (3) failure to provide meal periods, (4) failure to provide rest periods, (5) waiting time penalties, (6) wage statement violations, (7) failure to timely pay wages, (8) failure to indemnify all necessary

---

[1] Defendant denies all of Plaintiff's allegations and denies that class treatment is appropriate for this action. All estimates and calculations supporting the removal of this action are based solely on Plaintiff's allegations as pled in the Complaint. Such estimates and calculations are not admissions that any such amounts – or any amounts – are owed to Plaintiff or the putative class.

business expenditures, (9) violation of Labor Code section 227.3, (10) Unfair Competition Law. (Applen Decl. ¶ 2.)

3.    On November 17, 2025, Plaintiff served Defendant with a copy of the Summons and Civil Case Cover Sheet, as well as other documents filed in the State Court Action. On December 17, 2025, Defendant filed its Notice of Appearance in the State Court Action. On February 2, 2026, Plaintiff served Defendant with a copy of the Joint Case Management Statement. On February 9, 2026, Defendant filed a Notice of Court's Ruling at the Initial Status Conference on February 4, 2026. True and correct of all other process and pleadings served by Plaintiff on Defendant or filed by Defendant are attached as **Exhibit B** to this Notice of Removal. (Applen Decl. ¶ 3.)

4.    On October 23, 2025, The State Court filed a Notice of Case Assignment. On December 1, 2025, the State Court issued an Initial Status Conference Order which scheduled the Initial Status Conference for February 4, 2026. On December 1, 2025, the State Court issued a Minute Order, which scheduled the Initial Status Conference for February 4, 2026. On February 4, 2026, the State Court issued a Minute Order, which set a deadline to file a motion to compel arbitration by March 6, 2026. True and correct copies of all orders issued by the State Court and served by Plaintiff or downloaded by Defendant are attached as **Exhibit C** to this Notice of Removal. (Applen Decl. ¶ 4.)

5.    Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint and the citizenship of the "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

## II.    <u>DEFENDANT HAS SATISIFED THE PROCEDURAL REQUIREMENTS FOR REMOVAL</u>

### A.    <u>Timeliness.</u>

6.    The time to remove under 28 U.S.C. section 1446(b) does not begin to

run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). In *Harris*, the Ninth Circuit held that defendant has <u>no</u> <u>obligation</u> to investigate or develop additional information as to removability. *Id*. at 695 ("[N]otice of removability under 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by the defendant.) In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit reinforced its decision in *Harris* regarding the duty to investigate removability, finding that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" to ascertain removability. *Kuxhausen*, 707 F.3d at 1139.

7.    In *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720F.3d 1121, 1125 (9th Cir. 2013), the Ninth Circuit affirmed *Harris*'s holding "that a defendant does not have a duty of inquiry if the initial pleading or other document <u>is</u> "indeterminate" with respect to removability." *Roth* explained that "a defendant who has not lost the right to remove because of a failure to timely file ... may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id*. 1123. "A CAFA case may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(l) and (b)(3) has been triggered." *Id*. at 1126 (emphasis added). Thus, when the complaint on its own "does not reveal that the case is removable [under CAFA], the 30-day time period never starts to run and the defendant may remove at any time." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014). Starting the 30-day clock under § 1446(b)(3) is more difficult than under § 1446(b)(l). *See Dietrich v. Boeing Company*, 14 F.4th 1089, 1093 (9th Cir. 2021) (recognizing that § 1446(b )(3) "seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally").

8.    Courts within this district have consistently rejected arguments that

CAFA removals were untimely in situations where the complaint did not affirmatively allege an amount in controversy or attempted to plead around any specific amount in controversy. *See e,g, Vasquez v. Impact Fulfillment Servs., LLC*, No. EDCV 24-2145 JGB (SHKX), 2025 WL 636712, at *3–4 (C.D. Cal. Feb. 27, 2025) (denying a motion to remand where removability of the action was not clear from the face of the Complaint or the FAC as neither allege that the estimated number of putative class members is at least 100 nor do they allege that the amount in controversy exceeds $5,000,000.); and *Allen Saltzman LLP v. Bank of Am. N.A.*, No. EDCV 24-1956 JGB (SPX), 2025 WL 1914896, at *5 (C.D. Cal. June 11, 2025) (denying a motion to remand where neither the Complaint nor the First Amended Complaint allege that the amount in controversy exceeds $5,000,0000).

9.      Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class. The Complaint does not allege the size of any putative class, nor does it allege any claim under federal law. Accordingly, as mentioned, it is not possible to ascertain from the Complaint that this case is removable, and, to date, Defendant has not received any other document which would constitute an "other pleading, motion, order or other paper" providing this missing information.

10.      Accordingly, the time to remove this action has not yet begun. Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable. *Roth*, 720 F.3d at 1125. As set forth below, Defendant has only recently discovered such evidence after an arduous collection and review of all records of potential class members and a complex analysis of the estimated damages allocated to each cause of action. Therefore, Defendant is timely removing this case based on that discovery.

Case No. _____

**B.** **Venue**

11. The Superior Court for the County of Los Angeles is located within the Central District of California. Therefore, the action is properly removed to this Court pursuant to 28 U.S.C. section 84(d) because it is the "district embracing the place where such action is pending." 28 U.S.C. § 1441(a).

**C.** **Procedural Requirements**

12. Pursuant to 28 U.S.C. section 1446(a), copies of all process, pleadings, and orders served upon Defendant and filed by Defendant are attached as Exhibits A-C to this Notice of Removal. (Applen Decl. ¶¶ 2-5.)

## III. REMOVAL IS PROPER UNDER CAFA

13. This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

**A.** **The Removed Action Is A "Class Action" Subject To CAFA Removal**

14. Plaintiff filed their Complaint on October 23, 2025. (Ex. A).

15. Plaintiff seeks to represent a proposed class defined as follows: "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class (collectively referred to as "Class Members")". (*Id.*, ¶ 28 [emphasis in original]).

**B.** **The Number Of Putative Class Members Exceeds 100**

16. Defendant's employment records show that there are at least 778 non-exempt employees who worked for Defendant in California between October 23, 2021 and November 10, 2025. (Declaration of Hassan Assaf ["Assaf Decl.], ¶ 5.)

17. Accordingly, the CAFA numerosity requirement is fulfilled because

6

Case No. _____

DEFENDANT DFA DAIRY BRANDS FLUID, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

there are more than 100 class members implicated in Plaintiff's Complaint. 28 U.S.C. § 1332(d).

### C.    Plaintiff And Defendant Are Citizens Of Different States

18.    The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the Court need only find that there is diversity between one putative class member and one defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

19.    Citizenship of Plaintiff. Plaintiff, a putative class member, is a citizen of the State of California.

20.    Citizenship of Defendant. Defendant DFA Dairy Brands Fluid, LLC is a limited liability company, whose sole member is DFA Dairy Brands, LLC. (Declaration of Kevin J. Cody ["Cody Decl."] ¶ 4). DFA Dairy Brands, LLC is also a limited liability company. (*Id.*) The sole member of DFA Dairy Brands, LLC is Dairy Farmers of America, Inc., whose principal place of business is in the State of Kansas and is also incorporated under the laws of the State of Kansas. (*Id.*) As a result, DFA Dairy Brands, LLC is a citizen of Kansas.

21.    Accordingly, DFA Dairy Brands Fluid, LLC – by virtue of DFA Dairy Brands, LLC and Dairy Farmers of America, Inc. – is a citizen of Kansas and not California. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens.").

22.    Accordingly, the minimal diversity requirement of 28 U.S.C. 1332(d) is met in this action because Defendant is a citizen of Kansas, while Plaintiff is a citizen of California.

### D.    The Alleged Amount In Controversy Exceeds $5,000,000

23.    Plaintiff has not alleged a specific amount in controversy in the Complaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy

7

Case No. _____

exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is <u>more likely than not</u> that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

24.    In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (*citing Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

25.    While Defendant denies the validity of Plaintiff's claims and requests for relief, and does not concede in any way that the allegations in the First Amended Complaint are accurate, that Plaintiff's claims are amenable to class wide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

26.    In determining the amount in controversy to support its Notice of Removal, Defendant relies here on a conservative estimate of the amount in controversy based on damages and attorneys' fees sought by Plaintiff as a result of

the alleged: (1) failure to provide meal periods;[2] (2) failure to provide rest periods; (3) waiting time penalties; and (4) wage statement violations.

### 1. **Plaintiff's Claim For Meal Break Violations**

27. In support of his third cause of action Plaintiff alleges: "For four (4) years prior to the filing of the Complaint in this action through the present, Plaintiff and Class Members were, at times, not provided complete, timely 30-minute, duty-free uninterrupted meal periods every five hours of work without waiving the right to take them, as permitted." (Complaint, ¶ 54.) Plaintiff also alleges that: "Moreover, at times, Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not provided compliant meal periods (*Id.*). Plaintiff further alleges that: "As a result of Defendants" unlawful conduct, Plaintiff and Class Members have suffered damages in an amount, subject to proof, to the extent they were not paid additional pay owed for missed, untimely, interrupted, incomplete and/or on-duty meal periods." (*Id.*, ¶ 56.)

28. Plaintiff alleges that Defendant's acts constitute unfair competition within the meaning of Business and Professions Code Section 17200. (*Id.*, ¶¶ 103-107.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for Plaintiff's meal break claim is based on a four (4) year limitations period.

29. Under California law, employees who are not provided with meal periods are entitled to one hour of premium pay for each day that a meal period is not provided. *See Marlo v. United Parcel Serv., Inc.*, No. CV 03-04336 DDP, 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009). Meal period claims are properly considered

---

[2] Plaintiff also makes claims alleging unpaid overtime wages, unpaid minimum wages, and failure to reimburse business expenses. (See Ex. A, ¶¶ 38-49, 89-95.) Defendant does not attempt to calculate the amounts placed in controversy by these claims but reserves the right to do so in opposition to any motion to remand or order to show cause.

in determining the amount in controversy. *See, e.g., Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, No. C 08-01184 SI, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

30.     When determining the amount placed in controversy by a plaintiff's meal period allegations, like those alleged by Plaintiff in the Complaint, an estimated 20% violation rate is both reasonable and conservative where, as here, Plaintiff contends that Defendant's policies and procedures were to not provide employees with legally compliant breaks and to not pay employees one hour of pay at the employees" regular rate of pay. (*See* Complaint ¶ 54.); *see Thompson v. La Petite Acad., Inc.*, 2022 WL 5241838, at *5 (C.D. Cal. Oct. 6, 2022) (finding "the assumed violation rate of 20% is reasonable, particularly in light of Plaintiff's failure to offer any alternative limiting principle or rebuttal evidence."); *Alfaro v. Banter by Piercing Pagoda*, 2022 WL 1284823, *3 (C.D. Cal. 2022) (finding an assumption of a 25% violation rate based off Plaintiff's allegation that Defendant has "at times" failed to provide putative class members with compliant meal and rest periods … is entirely reasonable considering the plain text of Plaintiff's allegations place some, but not all, of the meal and rest break periods in controversy."[3]; *Cabrera v. South Valley Almond Company*, 2021 WL 5937585, *6 (E.D. Cal. 2021) ("In the Court's view, however, assuming that a violation occurred in connection with one out of five breaks [a 20% violation rate] is consistent with language in the Complaint stating that violations occurred "at times.""); *Brown v. Janus of Santa Cruz*, 2021 WL 3413349, *7 (N.D. Cal. 2021) ("The "at times" language supports an inference that Defendant made these deductions

---

[3] Plaintiff's counsel here also represented the *Alfaro* plaintiff. The *Alfaro* court expressed disapproval of the *Alfaro* plaintiff, stating: "Plaintiff's attempt to limit the scope of her complaint by pointing to allegations that state Defendant "at times" violated wage and hour laws or that only "some" class members experienced violations is not compelling. Indeed, Plaintiff cannot avoid this Court's CAFA jurisdiction through artful pleading. Such a tactic would essentially eviscerate a defendant's ability to invoke CAFA jurisdiction, contract to the intent of Congress." *Id.*

[to cover up missing meal breaks] 50% of the time when employees missed meal breaks. The Court thus finds that the allegations in the complaint support a reasonable inference that [the employer] deducted thirty minutes of wages in 25% of all non-exempt employee shifts).

31.    Based on a review of Defendant's business records, the putative class members worked at least 396,439 shifts exceeding 5 hours in length between October 23, 2021, and November 10, 2025. (Assaf Decl., ¶ 8.) The average base hourly rate of the putative class members was at least $34.01 per hour during this period. (*Id*. ¶ 5.)

32.    Assuming, *arguendo*, the truth of Plaintiff's allegations, Defendant conservatively estimates that the amount placed into controversy by Plaintiff's claim for failure to provide legally compliant rest periods is at least **$2,696,551** (20% x $34.01 per hour x one hour premium pay x 396,439 shifts). The computation of the amount in controversy is based on a conservative estimate that there was a meal break violation during 20% of the 396,439 rest-break eligible shifts (79,287 shifts), and that the putative class members earned an average base hourly rate of pay of at least $34.01 per hour during the relevant period. (Assaf Decl., ¶¶ 5, 8.)

### 2.    Plaintiff's Claim For Rest Break Violations

33.    In support of his fourth cause of action Plaintiff alleges: "For four (4) years prior to the filing of the Complaint in this action through the present, Plaintiff and Class Members were, at times, not authorized or permitted to take complete, timely 10-minute, duty-free uninterrupted rest periods every four (4) hours of work or major fraction thereof. (Complaint, ¶ 62.) Plaintiff further alleges: "Moreover, at times, Defendants failed to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on the occasions that Class Members were not authorized or permitted to take compliant rest periods." (*Id*.) Plaintiff continues to allege: "As a result of Defendants" unlawful conduct, Plaintiff and Class Members have suffered damages in an amount, subject to proof, to the extent they were not

11

paid additional pay owed for rest periods that they were not authorized or permitted to take (*Id.*, ¶ 64.)

34.	Plaintiff alleges that Defendant's acts constitute unfair competition within the meaning of Business and Professions Code Section 17200. (*Id.*, ¶¶ 124-128.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for Plaintiff's meal break claim is based on a four (4) year limitations period.

35.	Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1029 (2012). Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided. *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011). Rest period claims are properly considered in determining the amount in controversy. *See, e.g., Olson v. Becton, Dickinson & Co.*, 19-cv-865-MMA, 2019 WL 4673329, *4-5 (S.D. Cal. Sept. 25, 2019).

36.	As with rest periods, an estimate of a 20% violation rate for meal periods is both reasonable and conservative. *See Thompson*, 2022 WL 5241838, at *5 (C.D. Cal. Oct. 6, 2022) (finding "the assumed violation rate of 20% is reasonable, particularly in light of Plaintiff's failure to offer any alternative limiting principle or rebuttal evidence."); *Alfaro*, 2022 WL 1284823, *3 (C.D. Cal. 2022) (finding an assumption of a 25% violation rate based off Plaintiff's allegation that Defendant has "at times" failed to provide putative class members with compliant meal and rest periods … is entirely reasonable considering the plain text of Plaintiff's allegations place some, but not all, of the meal and rest break periods in controversy."); *Cabrera*, 2021 WL 5937585, *6 (E.D. Cal. 2021) ("In the Court's view, however, assuming that a violation occurred in connection with one out of five breaks [a 20% violation rate] is consistent with language in the Complaint stating that violations occurred "at times.""); *Brown*, 2021 WL 3413349, *7 (N.D. Cal.

12

2021) ("The "at times" language supports an inference that Defendant made these deductions [to cover up missing meal breaks] 50% of the time when employees missed meal breaks. The Court thus finds that the allegations in the complaint support a reasonable inference that [the employer] deducted thirty minutes of wages in 25% of all non-exempt employee shifts). This assumption is less than the violation rates approved in other cases, which alleges violations occurred "at times." *Id.*

37.    Based on a review of Defendant's business records, the putative class members worked at least 400,230 shifts exceeding 3.5 hours in length between October 23, 2021, and November 10, 2025. (Assaf Decl., ¶ 7.) The average base hourly rate of the putative class members was at least $34.01 per hour during this period. (*Id.* ¶ 5.)

38.    Assuming, *arguendo*, the truth of Plaintiff's allegations, Defendant conservatively estimates that the amount placed into controversy by Plaintiff's claim for failure to provide legally compliant rest periods is at least **$2,722,364** (20% x $34.01 per hour x one hour premium pay x 400,230 shifts). The computation of the amount in controversy is based on a conservative estimate that there was a rest break violation during 20% of the 400,230 rest-break eligible shifts (80,046 shifts), and that the putative class members earned an average base hourly rate of pay of at least $34.01 per hour during the relevant period. (Assaf Decl., ¶¶ 5, 7.)

### 3.    Plaintiff's Claim For Waiting Time Penalties

39.    In support of his fifth cause of action Plaintiff alleges: "in the three (3) years before the filing of the Complaint in this action through the present, Plaintiff alleges that "Defendants, due to the failure, at times, to provide overtime wages mentioned. above, failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination in accordance with Labor Code sections 201 or 202." (Complaint, ¶ 69.) Plaintiff further alleges "Defendants" failure, at times, to pay Plaintiff and Class Members all wages earned prior to termination or resignation in accordance with Labor Code sections 201 and 202 was willful." (*Id.*, ¶ 70.)  Plaintiff

DEFENDANT DFA DAIRY BRANDS FLUID, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

also alleges "Plaintiff and Class Members are entitled to waiting time penalties from the date their earned and unpaid wages were due, upon termination or resignation, until paid, up to a maximum of thirty (30) days." (*Id.*, ¶ 71.)

40.    Under Labor Code section 203, "[i]f an employer willfully fails to pay ... any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid ... but the wages shall not continue for more than 30 days." Lab. Code § 203(a). A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of Am., NA.*, 50 Cal. 4th 1389, 1398 (2010).

41.    Here, Plaintiff alleges systemic violations that were not limited to any particular sub-group of putative class members. As such, it is reasonable to conclude that all former employees were terminated while being owed at least *some* amount of money – which, in turn, would trigger Plaintiff's claim for 30-days of continued wages for every former employee at their daily wage rates. *See Cavada v. Inter-Cont''l Hotel Grp., Inc.,* No. 19cv1675-GPC(BLM), 2019 WL 5677846, at* 8-9 (S.D. Cal. Nov. 1, 2019) (finding 100% violation rate reasonable because waiting time penalties were based on one missed meal and one missed rest break per putative class members); *Quintana v. Claire ''s Stores, Inc.,* No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendant's waiting time penalties calculation was "supported by Plaintiffs allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Mackall v. Healthsource Global Staffing, Inc.,* No. 16-cv-03810-WHO, 2016 WL 4579099, at *4-6 (N.D. Cal. Sept. 2, 2016) (holding that a 100% violation rate appropriate, given allegations that the defendant "consistently maintained and enforced unlawful policies" and failed to pay overtime that was "regularly worked"); *Garza v. Brinderson Constructors, Inc.,* 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (approving a 100% violation rate for waiting time penalty

14                    Case No. _____

calculations based on "at all relevant times" language); *Mendoza v. National Vision, Inc.,* No. 19-cv-01485-SVK, 2019 WL 2929745, at *4-6 (N.D. Cal. Jul. 8, 2019) (holding that it was reasonable to assume a 100% violation rate for waiting time penalties due to allegations that the defendant "regularly and consistently" failed to pay overtime wages as part of its "uniform policies and practices"); *Chavez,* supra, 2019 WL 1501576, at *3 (finding that claims of a "pattern and practice" of failing to pay class members all final wages supports a 100% violation rate).

42. Here, there are at least 89 putative class members separated from employment in the 3-year liability period from October 23, 2022 to November 10, 2025. (Assaf Decl., ¶ 10.)

43. Using the putative class members" average hours worked per day and their average hourly rate of pay, and calculating using 30 days of unpaid wages, the amount placed in controversy by the Failure to Pay Wages at Separation Claim is at least **$769,996.** (*Id.* at ¶ 10.)

#### 4.    **Plaintiff's Claim for Wage Statement Violations**

44. In support of his seventh cause of action, Plaintiff alleges: "Defendants failed to comply with Labor Code section 226, subdivision (a) by adopting policies and practices that resulted in their failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements that accurately reflect, among other things, gross wages earned; total hours worked; net wages earned; all applicable hourly rates in effect during the pay pe1iod and the corresponding number of hours worked at each hourly rate; and the name and address of the legal entity that is the employer; among other things. (Complaint, ¶ 77.) Plaintiff further alleges: "Defendants" failure to, at times, provide Plaintiff and Class Members with accurate wage statements was knowing, intentional, and willful." (*Id.*, ¶ 78.)

45. Plaintiff seeks to recover "$50 for the initial pay period during the period in which violation of Labor Code section 226 occurred and $100 for each violation of Labor Code section 226 in a subsequent pay period, not to exceed an

Case No. _____

aggregate $4,000.00 per employee. (*Id*., ¶ 80.)

46.    The statute of limitations for a claim for wage statement penalties under Labor Code Section 226(e) is one year. Cal. Civ. Proc. Code § 340(a).

47.    Based on a review of Defendant's business records, 398 putative class members received at least one wage statement during the time period October 15, 2024, and November 10, 2025, and Defendant issued a total of 9,680 wage statements during this same time period. (Assaf Decl., ¶ 9.)

48.    Based on Plaintiff's allegations regarding the litany of unpaid overtime, unpaid minimum wages, and meal/rest period violations, Defendant may reasonably assume that the Complaint alleges that every wage statement includes some form of violation and is at issue when calculating the amount in controversy. Indeed, courts have found an assumed 100% violation rate for wage statement claims reasonable based on similar allegations. *See, e.g., Altamirano v. Shaw Indus., Inc.* C-13-0939 EMC, 2013 WL 2950600, at *11 (N.D. Cal. June 14, 2013) (holding that it is reasonable to assume at 100% violation rate in light of plaintiff's allegations about the pervasiveness of the policies that are the subject of the first three causes of action for failure to pay minimum wages, failure to pay overtime wages, and failure to provide meal periods.); *see also Mendoza v. Nat''l Vision, Inc*., No. 19-CV-01485-SVK, 2019 WL 2929745, at *6 (N.D. Cal. July 8, 2019) (finding a 100% violation rate reasonable where plaintiff alleges that "throughout the relevant period," Defendant "issued "wage statements [that] inaccurately report the number of hours worked, the number of overtime hours worked, gross wages earned, net wages earned and deductions."); *see also Byrd v. Masonite Corporation*, EDCV 16-35 JGB (KKx), 2016 WL 2593912 (C.D. Cal. May 5, 2016)  at *6–7 (finding a 100% violation reasonable where the plaintiff alleged that wage statement violations occurred "at all material times" because of a "uniform policy/practice of wage abuse"); *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc*., No. EDCV190839DOCSPX, 2019 WL 7987117, at *4 (C.D. Cal. June 21, 2019) [same.

Case No. _____

DEFENDANT DFA DAIRY BRANDS FLUID, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

49.     Assuming, arguendo, the truth of Plaintiff's allegations, and assuming conservatively that each putative class member suffered one wage statement violation for every pay period, putative class members are entitled to recover at least $987,800 in wage statement penalties pursuant to Labor Code section 226(e): (398 employees who received at least one wage statement x $50 initial violation rate) + (9,282 subsequent wage statements x $100 subsequent violation rate) = **$948,100.**

### 5.     Attorneys' Fees

50.     Plaintiff explicitly seeks attorneys' fees should he recover for any of the claims in this action. (*See* Complaint, Prayer for Relief.) Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.").

51.     Under the Ninth Circuit's well-established precedent, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998), overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011); *Barcia v. Contain-A-Way, Inc.,* No. 07cv938 IEG JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, "[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases."") (*quoting Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2008 WL 3385452, at *4 (N.D. Cal. Aug. 8, 2008)); *Lucas v. Michael Kors Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).

52.     Defendant has established the total amount in controversy, exclusive of attorneys' fees, is **$7,137,011.** Plaintiff has not indicated he will seek less than 25% percent of a common fund in attorneys' fees. Defendant denies any such attorneys'

fees are owed to Plaintiff or putative class members. However, solely for purposes of this jurisdictional analysis, Defendant relies on Plaintiff's allegations the attorneys' fees are owed. Given the valuation of this matter, the attorneys' fees portion is valued at **$1,784,252**, calculated as follows[4]:

| Conservative Estimate of Amount in Controversy from Plaintiff's Claims Included Herein: | $7,137,011 |
|---|---|
| Attorneys' Fees Benchmark: | 25% |
| Attorneys' Fees: | $1,784,252 |

### 6.    Summary of Amount in Controversy.

53.    Defendant denies all the material allegations of the Complaint and disputes all liability and Plaintiff's entitlement to any recovery.

54.    Given Defendant's denial, the Complaint places in actual controversy more than the required $5 million for purposes of removal under CAFA, even without considering attorney fees. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees may properly be included in calculation of the amount of controversy where an underlying statute authorizes an award of attorneys' fees).

| Claim | Amount in Controversy |
|---|---|
| Unpaid Meal Premiums | $2,696,551 |
| Unpaid Rest Premiums | $2,722,364 |
| Waiting Time Penalties | $769,996 |
| Wage Statement Penalties § 226(e) | $948,100 |

---

[4] In calculating estimated alleged attorneys' fees, Defendant excluded the estimated amounts in controversy for alleged unpaid minimum wages and overtime pay Plaintiff seeks. The calculation for attorneys' fees is higher than the conservative estimate calculated here because Plaintiff alleges, he is also entitled to attorneys' fees for the excluded claims.

18                                Case No. _____

| Total (Not Including Attorneys' Fees) | $7,137,011 |
|---|---|
| Attorneys' Fees | $1,784,252 |
| **Total** | **$8,921,263** |

55. Accordingly, removal of this action under CAFA is proper under Section 1332(d) because the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold.

56. Finally, if the Court disagrees with the violation rates Defendant utilized in its calculations (above) and the Court can identify better assumptions, then the Court should consider the claims under the better assumptions rather than zero out the claim. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022).

## IV.    COMPLIANCE WITH OTHER REMOVAL REQUIREMENTS

57. As required by 28 U.S.C. § 1446(a), this Notice of Removal is filed in the district court of the United States in which the action is pending. The state court action was pending in the Los Angeles County Superior Court, which is located within the boundaries of this Court. Thus, venue is proper in this Court. 28 U.S.C. § 1441(a).

58. In accordance with 28 U.S.C. §1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Los Angeles. Notice of compliance shall be filed promptly afterwards with this Court.

59. WHEREFORE, Defendant hereby removes the above-entitled action to this Court.

DEFENDANT DFA DAIRY BRANDS FLUID, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

DATED: March 5, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Aaron H. Cole
Aaron H. Cole
Vi N. Applen
Patrick T. Cain

Attorneys for Defendants
DFA DAIRY BRANDS FLUID, LLC

Case No. _____

DEFENDANT DFA DAIRY BRANDS FLUID, LLC'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT